

APR - 1 2015

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

UNITED STATES OF AMERICA )
)
v. ) Criminal No.: 3:10CR328–HEH
) Civil Action No.: 3:13CV776–HEH
RANDOLPH BAKER, )
)
      Petitioner. )

### MEMORANDUM OPINION
**(Petitioner's Motion to Vacate, Set Aside, or Correct Sentence
Pursuant to 28 U.S.C. § 2255)**

Shortly after the United States Court of Appeals for the Fourth Circuit affirmed his

conviction in this case, the Petitioner, Randolph Baker ("Baker"), currently a federal

inmate,[1] filed the immediate petition seeking relief under 28 U.S.C. § 2255 ("§ 2255

Motion," ECF No. 62). The claims raised in his petition closely track those rejected by

the appellate court.

Baker initially entered a plea of guilty on March 31, 2011 to a single count

Indictment charging Conspiracy to Distribute and Possess with Intent to Distribute

Oxycodone, in violation on 21 U.S.C. § 846. However, prior to the imposition of

sentence, Baker filed a *pro se* motion asking to withdraw his plea as improvidently

entered. After careful consideration, the Court granted the motion, vacated his plea of

guilty, and set the case for a trial without a jury on May 26, 2011. On that date, the Court

heard testimony from three individuals who testified that they had purchased oxycodone

---

[1] Baker is currently serving his sentence at the Federal Correctional Institute Yazoo City Low in
Yazoo City, MS.

pills from Baker in Miami, Florida for redistribution.  The evidence portrayed a network

of individuals purchasing hundreds of oxycodone pills from Baker on multiple occasions,

transporting the pills to Boston, Massachusetts, and returning to Miami with the

proceeds, frequently between $45,000 and $86,000.  Although Baker argued that the

evidence failed to demonstrate more than a mere buyer-seller relationship, the Court

concluded that the course of dealings was sufficient to prove the type of continuing

relationships and repeated transactions sufficient to support proof of a conspiracy.[2]

Following the Court's finding of guilty, Baker's case was referred to the United

States Probation Office for the preparation of a Presentence Report ("PSR").  A

sentencing hearing was docketed for August 26, 2011.  The probation officer conducting

the investigation concluded that Baker had a base offense level of 32 under the United

States Sentencing Guidelines ("U.S.S.G.").  Because Baker was in possession of two

firearms in connection with the distribution of oxycodone, two points were added for a

Total Offense Level of 34.  Since Baker denied his guilt, he received no credit for

responsibility.  Furthermore, although the officer determined that Baker had a Criminal

History Category I, he noted that Baker had five prior felony convictions, including

aggravated assault, unemployment compensation fraud, grand theft third degree,

possession of a firearm by a convicted felon, and distribution and possession of cocaine,

along with an assortment of misdemeanor convictions.  Consequently, the probation

---

[2] Although Baker contends in his § 2255 motion that his counsel improperly dissuaded him from testifying, the record will show that the trial court took an extended recess to enable Baker and his counsel to confer about his right to testify.  When court resumed, his counsel indicated that his client "understanding his right to take the stand, we're going to rest at this time." (Trial Tr. at 223, ECF No. 48.)

officer determined that the defendant was not eligible for a reduction under U.S.S.G. §5C1.2, commonly known as the safety valve.

At the sentencing hearing on August 26, 2011, Baker objected to the drug weight of 222.56 grams of oxycodone computed by the probation officer in the PSR. Therefore, this Court heard extensive oral argument from counsel as to the appropriate drug weight in this case. In support of its position, the government offered the testimony not only of the co-conspirators, but also files and documents arguably reflecting the volume of oxycodone at issue. (Sentencing Tr. 4–11, Aug. 26, 2011, ECF No. 45.) In order to carefully calculate the total weight, the Court deferred a finding pending the preparation of a trial transcript and continued the sentencing hearing for approximately one month. (*Id.* at 13–15.) The Court also suggested that counsel might want to use that period to resolve the drug weight issue by agreement, if possible.

On September 27, 2011, after hearing further argument of counsel, the Court determined that based on relevant conduct, Baker was responsible for 158 grams of oxycodone. (Sentencing Tr. 15, Sept. 27, 2011, ECF No. 44.) Baker then urged the Court to deduct from the total weight the quantity of oxycodone that he would have legitimately used to ease pain associated with conditions he allegedly suffered. Given the absence of persuasive evidence in the record to support such reduction, that motion was denied. (*Id.* at 17.) The Court then imposed a sentence of 156 months within the guideline range.

Baker timely filed a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit, which affirmed this Court's judgment in an unpublished opinion on

August 23, 2012. *See United States v. Baker*, 493 F. App'x 413 (4th Cir. 2012). In its opinion, the Fourth Circuit specifically addressed two claims raised in the petition presently before this Court. *Id.* at 414. The appellate court succinctly concluded, "Baker argues that the evidence was insufficient to support his conviction and that the district court incorrectly calculated his sentencing range. Finding no merit to Baker's challenges, we affirm." *Id.*

In its analysis of the sufficiency of the evidence to support Baker's conviction on the conspiracy charge, the Fourth Circuit specifically addressed his claim that the government failed to establish the existence of an agreement between the alleged co-conspirators and that the limited number of proven transactions demonstrated no more than a mere buyer-seller relationship. The appellate court restated the well-established tenet that the agreement underlying a conspiracy "need only be a tacit or mutual understanding between the defendant and his accomplice. And, [c]ircumstantial evidence alone is sufficient to support a conviction for conspiracy." *Id.* at 416 (internal quotation marks and citations omitted). "[E]vidence of continuing relationships and repeated transactions" can support a finding of conspiracy, "especially when coupled with substantial quantities of drugs." *Id.* (quoting *United States v. Reid*, 523 F.3d 310, 317 (4th Cir. 2008)). The Fourth Circuit ultimately concluded "[h]ere, as in *Hackley*, the evidence of 'continuing relationships and repeated transactions,' supports Baker's conspiracy conviction. In fact, the evidence upon which Baker's conviction rests is far more persuasive than the minimum standard of sufficiency we established in *Hackley*."

4

*Baker*, 493 F. App'x at 416 (quoting *United States v. Hackley*, 662 F.3d 671, 679 (4th

Cir. 2011)).

With respect to the drug weight calculations, the Fourth Circuit observed that:

Not only were the court's calculations precise and conservative, the court continued the sentencing for a month to afford the parties ample time to explore the appropriate drug weights. During the continuance, the parties produced a "Joint Statement of Parties Regarding Drug Weight," on which the district court relied during Baker's sentencing hearing.

Accordingly, we find that the district court did not clearly err in overruling Baker's objection to the relevant conduct determination, and that the court correctly calculated Baker's sentencing range.

*Baker*, 493 F. App'x at 417–18.

Because the sufficiency of the evidence and the accuracy of the drug weight

calculations were raised and considered on direct appeal, they cannot be relitigated in a

§ 2255 motion. *See United States v. Linder*, 552 F.3d 391, 397 (4th Cir. 2009); *see also*

*Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) ("Boeckenhaupt will

not be allowed to recast, under the guise of collateral attack, questions fully considered"

on appeal.); *Withrow v. Williams*, 507 U.S. 680, 720–21 (1993).

Closely associated with Baker's challenge to the adequacy of the evidence is his

assertion that the trial court lacked subject matter jurisdiction. He argues that the

connection with the Eastern District of Virginia was tenuous. In his § 2255 Motion,

Baker readily concedes that "[h]e was prescribed well over 200 pills per month. He

discovered that he could, from time to time, supplement his income by selling some of

those pills." (Def.'s § 2255 Mot. 16.) He also acknowledged distributing large quantities

of oxycodone pills to co-defendant Alves. "And, some months, Alves bought all of the

approximately 150 to 200 pills that defendant was looking to sell to whoever wanted

them." (*Id.* at 17.) The evidence adduced at trial, and adopted by the Fourth Circuit in its

opinion in this case, revealed that Baker was aware that his co-conspirators traveled from

Boston to Florida to purchase oxycodone pills and transported them to Boston for resale.

*Baker*, 493 F. App'x at 414. The Fourth Circuit also noted that "[o]ne of Alves's main

couriers, Daniel Lennon, testified that he transported between $45,000 and $86,000 of

Alves's money [from Boston] to Florida on each of seven separate trips and accompanied

Alves during most of the drug transactions with Baker." *Id.* at 415. Lennon was arrested

in early August of 2011 in Emporia, Virginia, in the Eastern District of Virginia,

transporting 9,000 oxycodone pills in a vehicle rented by co-defendant Alves. *Id.* The

evidence was more than sufficient to link the conspiracy with the Eastern District of

Virginia. "A conspiracy may be prosecuted in any district in which the agreement was

formed or in which an act in furtherance of the conspiracy was committed." *United*

*States v. Gilliam*, 975 F.2d 1050, 1057 (4th Cir. 1992); *see also United States v. Al-Talib*,

55 F.3d 923, 928 (4th Cir. 1995). Moreover, there is no requirement that a co-conspirator

be personally present in the jurisdiction in which the conspiracy is prosecuted, as long as

an overt act in furtherance of the conspiracy transpires in that jurisdiction. *United States*

*v. Bowens*, 224 F.3d 302, 309 (4th Cir. 2000).

     Failing to prevail on substantive claims, Baker shifts his focus to the performance

of his trial counsel. As previously mentioned, Baker maintains that he was intimidated

by his attorney and precluded from testifying in his own defense, in violation of his Sixth

Amendment right. Based on the record at hand, this claim is facially implausible. At the

close of the government's evidence, this Court took a recess specifically to enable counsel to confer with his client concerning his right to testify. When court resumed, Baker's attorney advised the court that after conferring with his client, and advising him of "his right to take the stand," defendant rested his case. (Trial Tr. 223–24.)

To prevail on a petition alleging ineffective assistance of counsel under 28 U.S.C. § 2255, a petitioner must first show that counsel's representation was deficient and second, that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *see also Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001). As to prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Although this Court finds no deficiency in counsel's representation, Baker's shallow claim is readily dismissible for lack of prejudice. Baker contends that if he had been allowed to testify, he would have explained his medical condition which necessitated his personal use of oxycodone. Given the frequency and quantity of oxycodone pills distributed by Baker, there is no reasonable probability that this

7

testimony would have changed the outcome of this case.[3] Baker argues that such

evidence would have been highly probative at his sentencing hearing. Baker's medical

condition was extensively discussed in the PSR and the government placed much of his

medical history into evidence at that time. But for the same reasons discussed above,

Baker's personal use of oxycodone would not have counter-balanced the other evidence

in the case clearly demonstrating the scale of his commercial drug sales.

Baker next finds fault with his counsel's perceived failure to vigorously litigate

several sentencing guideline issues. He points out that counsel failed to pursue a

sentence reduction under the safety valve provision of U.S.S.G. §5C1.2 and to urge the

Court to vary his guidelines downward or adopt a minimal role reduction, as allowed

under U.S.S.G. §3B1.2. Baker's perception of his counsel's ineffectiveness flows from

his misunderstanding of the law and parochial view of the evidence.

Baker's claim of entitlement to a safety valve reduction under U.S.S.G. §5C1.2

trips at the starting gate. Subsection 5C1.2(2) disqualifies any defendant who possessed a

firearm or other dangerous weapon in connection with the offense. As the Fourth Circuit

noted, "[i]nside of Baker's house, the agents found a number of oxycodone pills, empty

pill bottles, and two firearms." *Baker*, 493 F. App'x at 415. He was therefore ineligible

for such reduction.

---

[3] Baker also contends that his court-appointed counsel was ineffective for "failing to investigate, substantiate, collect evidence and establish defendant's medical condition, health care records, including drug prescriptions, and defendant's own ingestion of oxycodone." (Def.'s § 2255 Mot. 9.)

Baker's argument that he qualified for a minor role reduction under U.S.S.G. §3B1.2 is equally unpersuasive. As the commentary to §3B1.2 explains, this provision "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. §3B1.2, Application Note 3(A). Baker's attempt to discount his role was squarely rejected by the Fourth Circuit: "The trial record, however, belies this assertion, revealing that Baker sold to Alves somewhere between 200 and 300 pills on each of ten separate occasions from early June 2010 to early August 2010. This amount is far in excess of what an individual could use and proves that Baker did, in fact, sell a substantial amount of oxycodone." *Baker*, 493 F. App'x at 417. For the same reason, Baker would not have qualified for a downward variance. Despite having a Criminal History Category I, he had five prior felony convictions, including aggravated assault, unemployment compensation fraud, carrying a concealed firearm, possession of controlled substance, unlawful possession of a firearm by a convicted felon, distribution of cocaine, possession of cocaine, and several violations of probation.

Finally, Baker alleges that the district court failed to grant his request for an extension of time to file his § 2255 motion. As the Fourth Circuit pointed out in *United States v. White*, a district court has no jurisdiction to grant an extension of the filing period for a § 2255 motion when no such motion has been formally filed. 257 F. App'x 608, 609 (4th Cir. 2007) (citing *United States v. Leon*, 203 F.3d 162, 163–64 (2d Cir. 2000)).

9

Despite an array of challenges to the wisdom and judgment of his counsel, Baker has not demonstrated that counsel's performance was inadequate, ineffective, or prejudicial. Accordingly, no hearing is necessary or warranted. *Sanders v. United States*, 373 U.S. 1, 19 (1963).

Based on the foregoing analysis, Baker's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 will be denied.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Baker has not satisfied this standard. Accordingly, a certificate of appealability will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 31, 2015
Richmond, VA

10